## Rivers-Yager Company's Trustee in Bankruptcy v. Lincoln Bank & Trust Company.

(Decided December 3, 1929.)

JAMES P. GREGORY for appellant.

W. PRATT DALE and GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

The Rivers-Yager Company was a corporation whose general business was buying undeveloped real estate in Louisville, building houses on it, and then selling the property. It did business with the Lincoln Bank & Trust Company, who lent it money from time to time. On March 14, 1924, it borrowed of the bank $6,000, and executed a note therefor. On June 14, 1924, it paid on the note $1,376.68, leaving a balance due on August 16, 1924, of $4,717.89, for which a new note was then executed. After this the corporation sold some real estate and collected the proceeds, which it deposited with the bank, and on September 9, 1924, it gave the bank a check for $2,700, and on September 12, 1924, a check for $2,-017.89, in payment of the note. On November 24, 1924, upon the petition of some of its creditors, the Rivers-Yager Company was adjudged a bankrupt, and the trustee in bankruptcy on March 31, 1925, brought this action against the bank, charging that, when the money was paid in September 1924, the company was insolvent, and that the payment was made with intent to prefer the bank to its other creditors, and that the bank had reasonable cause to believe and know that the payment of money would effect the preference of the bank over other creditors. Proof was taken, and on the evidence the court dismissed the plaintiff's petition. He appeals.

The first question to be determined on the appeal is: What statute applies? Sections 60a and 60b of the Bankruptcy Act (11 USCA sec. 96 (a) and (b) provide:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication,

procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.

"(b). If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt, be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Section 67e of Bankruptcy Act (11 USCA sec. 107(e) also provides:

"And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under the previsions of this title against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the

benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Section 1910, Ky. Stats., provides that any assignment, act, or device done by a debtor in contemplation of insolvency with the design to prefer one or more creditors to the exclusion of others, shall operate as an assignment and transfer of all of the property of the debtor and shall inure to the benefit of all of his creditors. By section 1911, Ky. Stats., all such transfers shall be subject to the control of courts of equity upon the petition of any person interested filed within six months after the lodging of the transfer for record or the delivery of the property or effects transferred. The first question to be determined is, is this state statute covered by the provisions of section 67e of the bankruptcy statute quoted?

By the terms of section 67e it only applies to transfers "which are held null and void as against the creditors of such debtor by the laws of the state." A transfer within section 1910, Ky. Stats., is not null and void as against the creditors of the debtor by the law of Kentucky, but it operates for the benefit of all the creditors and is subject to the control of courts of equity upon the petition of any creditor filed within six months. If no such petition is filed, the transfer is valid. If such a petition is filed, the transfer is not null and void, but operates for the benefit of all the creditors. Authorities are cited to the effect that the word "void" in a statute is sometimes read "voidable," but that rule is never applied to the words "null and void." These words have a well defined meaning and leave nothing for construction. It is clear therefore that section 1910, Ky. Stats., does not apply here. The difference between it and section 60 of the Bankruptcy Act (11 USCA sec. 96) is that under the statute the transfer operates for the benefit of all the creditors, if the debtor, within six months before the action is brought, makes the transfer in contemplation of insolvency and intending to prefer one creditor to another. In other words, the intention of the debtor controls. Hazelhurst Lumber Co. v. Carlisle Lumber Co., 130 Ky. 1, 112 S. W. 934, and cases cited. But under the Bankruptcy Act the only transfers that are within

the statute are those made within four months before the filing of the petition, and in which the person who received it "shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference."

It therefore remains to be determined whether under the evidence the bank, at the time the checks were given it, had reasonable cause to believe that the payment of this money would give it a preference over the other creditors. To bring the transaction within the statute, the burden was on the plaintiff to make out his case by a preponderance of evidence. The officers of the bank all testify that they did not know that the corporation was insolvent and had no reason to think so. There is little contrary evidence. In the spring of 1924 the corporation was not doing much. Some of its creditors became uneasy, and it made out a schedule of its assets and liabilities, showing that it had assets more than sufficient to pay its debts. All the creditors appear to have acquiesced in this view on that showing, and no other showing was made until the corporation became bankrupt. But in the schedule of its assets then are included the note of Roy T. Yager for $4,800, secured by 48 shares of Rivers-Yager Company stock; also the note of R. H. Rivers, for $4,294.25, secured by 48 shares of Rivers-Yager Company's stock; also the note of William Winkler for $200, secured by 2 shares of Rivers-Yager Company's stock. These parties were the officers of the company. They were all insolvent, and their inability to pay these notes was in substance the cause of the company's insolvency. There is nothing to show that the bank had notice of this, or knew that these men had drawn this money out of the bank when the payment was made to the bank in September, 1924.

In cases of this sort, on the question of fact, the court does not disturb the finding of the chancellor, if the mind is left in doubt as to the truth; for he is on the ground, and some weight should be given to his judgment as to the credibility of the witnesses. On the whole case, the weight of the evidence is with the finding of the chancellor.

Judgment affirmed.