# State Bank of Stearns v. Stephens et al.
# Bryant's Trustee v. Same.

(Decided October 16, 1936.)

TYE. SILER, GILLIS & SILER for State Bank of Stearns and Bryant's Trustee.

E. C. NEWLIN, JR., for D. E. Bryant.

STEPHENS & STEELY and EMMETT, PURYEAR for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Dismissing in part and reversing in part.

The State Bank of Stearns, Ky., has appealed from a judgment dismissing an action begun by it against L. E. Bryant and Virginia L. Bryant, his wife, Dudley E. Bryant and Mrs. Dudley E. Bryant, his wife, Hester Bryant Glore and W. Scott Glore, her husband, E. L. Stephens, Nelle C. Steely, Boyle O. Rodes, George E. Fee, Genevieve H. Durell, Louis J. Dolle, A. T. Siler,

trustee for bondholders, the First National Bank of Somerset, Ky., the Kentucky and Tennessee Property Company, and the Goodman Manufacturing Company, defendants.

This appellant had attacked a mortgage given by L. E. Bryant to Stephens and Steely as made with the intent to delay, hinder, and defraud it and other creditors of L. E. Bryant, as made without consideration and as preferential and void.

H. M. Barnett, as trustee in bankruptcy of L. E. Bryant, has appealed from a judgment dismissing an action begun by said trustee on January 18, 1933, in the Whitley circuit court against E. L. Stephens and Nelle C. Steely, in which the trustee attacked as preferential a mortgage given to them by the bankrupt. On May 5, 1936, the two appeals were ordered to be heard together.

The bankrupt's full name is Louis Edward Bryant, and at some places in this record he is referred to as ''Louis'' and sometimes as ''Louis E.,'' but we shall refer to him as L. E. Bryant, that being the way his name most frequently appears, and all being one and the same man.

## The Debt and Mortgage.

On July 23, 1932, L. E. Bryant owed E. L. Stephens and Nelle C. Steely 10 notes which with their interest then aggregated about $12,000. One of these notes is signed ''L. E. Bryant, agent Bryant heirs, L. E. Bryant.'' The other notes and also the mortgage are signed ''Bryant Estate, by L. E. Bryant, agent. L. E. Bryant.''

Stephens & Steely were for years the attorneys for the Bryant estate. They rendered to it many and valuable services, as is well known to us from the evidence and from matters that have reached this court, and these notes were given for such services. Stephens & Steely, allege L. E. Bryant did this under a power of attorney to him, but that is denied; and there is no proof on the subject. Where a contract, required to be in writing and recorded, is made under a power of attorney as to third parties, the power of attorney must also be recorded. Section 499, Ky. Stats.

There is no suggestion anywhere that there was any lack of pre-existing consideration for these notes, or that they are not just and binding obligations.

Whether L. E. Bryant had or had not the power to bind the Bryant estate, by executing these notes and this mortgage as he did, is a question that is not before us. He certainly could and did bind himself by these notes, and by this mortgage he created a lien to secure them upon his share of the lands described in the mortgage which he gave. There was no contemporaneous but ample pre-existing consideration for the mortgage; it is a welldrawn instrument, and the only trouble about it, is that L. E. Bryant was then insolvent, owed divers other people and did not expressly include them in this mortgage, but at this point section 1910, Ky. Stats., intervenes and declares that a mortgage so given "shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors," etc.

Stephens & Steely were possibly unaware of the insolvency of L. E. Bryant, but that does not alter the situation. Nock's Ex'r v. Goodloe, 5 Ky. Law Rep. 247, 12 Ky. Op. 278.

### The Mortgaged Property.

In 1921, Roberta S. Bryant was the owner of many many thousands of acres of land, coal, timber, minerals, and mining rights in Pulaski, Wayne, Laurel, Whitley, and McCreary counties in Kentucky, and Scott and Campbell counties in Tennessee, and on September 6th of that year she conveyed these to the following parties and in the following proportions: Louis E. Bryant 43 1/3 per cent., Dudley E. Bryant 23 1/3 per cent., Hester Bryant Glore and W. S. Glore 33 1/3 per cent., respectively.

Some of these properties were sold on January 23, 1923, and all the debts of the Bryant estate were paid, except these Stephens & Steely notes, which appear to have been given for subsequent services, but these parties continued to hold what property was left in these proportions and thus held them when this mortgage was executed, hence, without expressing any opinion as to the remaining 56 2/3 per cent., we can certainly say the lien created by it rested upon the 43 1/3 per cent. of this property which was the aliquot share of L. E. Bryant therein.

### Suit by the Bank.

On October 5, 1932, the State Bank of Stearns filed

its suit in the McCreary circuit court in which it set out a note due it amounting with interest to $7,050.32, for which it prayed judgment against L. E. Bryant, and asked that the mortgage to Stephens & Steely be declared void and preferential, that it be canceled and the bank be adjudged to have a lien on the land described in the mortgage, and that it have all proper relief. It sued out attachments upon the grounds of L. E. Bryant's non-residency, and these were levied on this property in McCreary and Whitley counties. Stephens & Steely and L. E. Bryant now filed a pleading setting up the adjudication that L. E. Bryant was bankrupt, and no further steps were taken for four years.

### The Partition.

On November 23, 1932, partition of this land having been made, by the owners, Dudley E. Bryant, and wife, W. S. Glore and his wife, Hester Bryant Glore, conveyed to L. E. Bryant as his 43 1/3 per cent, of the theretofore jointly owned premises, a certain tract of land and certain minerals and mineral rights in Whitley and Laurel counties in Kentucky, alleged to aggregate 30,000 acres of land in fee and mineral rights and —— acres of mineral rights in Tenenssee, or more than 35,000 acres all told. Every one says this was a just and equitable division. This is copied from an order made by the referee in bankruptcy on January 26, 1933:

> "While the partition deeds were executed only a little more than thirty days prior to the filing of the petition in bankruptcy the Trustee reported that probably as equitable a partition of the lands was made as was possible, and recommended that no effort be made to set aside the partition deeds, and without objection the Trustee's report in this respect is approved."

### Bankruptcy.

On December 1, 1932, L. E. Bryant filed in the District Court of the United States for the Eastern District of Tennessee, wherein he then resided, his petition in bankruptcy, and on that day he was adjudicated bankrupt.

On December 22, 1932, H. M. Barnett was appointed and qualified as trustee of the estate of the bankrupt and on January 18, 1933, he, as such trustee, began this ac-

tion by filing in the Whitley circuit court a petition against E. L. Stephens and Nelle C. Steely, attacking this mortgage under section 1910, Ky. Stats., as preferential, and asking that it be so adjudged.

A special demurrer was filed, which was sustained, and the petition was dismissed. That judgment was reversed by this court. See 253 Ky. 573, 69 S. W. (2d) 1056.

The defendants Stephens & Steely now filed an answer, counterclaim, and cross-petition that with its exhibits and an amendment fills 42 pages of this record, and in which they sought to bring in by their cross-petition the Kentucky-Tennessee Property Company, Hester Bryant Glore, W. S. Glore, Dudley E. Bryant, his wife, Adeline Metcalfe Bryant, and the First National Bank of Somerset, Ky. The plaintiff filed motion to strike paragraphs 1 and 3 of this pleading and a general demurrer to paragraphs 2 and 4. The court overruled both. The court erred in overruling the motions to strike. See Wahl v. Lockwood & Gasser, 227 Ky. 183, 12 S. W. (2d) 321. A cross-petition can only be filed by defendants where it affects or is affected by the original cause of action. Subsection 3 of section 96, Civil Code of Practice.

When stripped to the bone, the plaintiff's petition said to the defendants: ''I am told you took from my bankrupt when he was insolvent a mortgage to secure a pre-existing debt.'' ''Did you do it?'' Instead of answering that simple question, defendants devoted all of these paragraphs 1 and 3 and much of paragraphs 2 and 4 to pleading and asserting certain rights they alleged they had to recover their debts from some one else. That had no proper place in this action by Barnett as trustee. Barnett as trustee had the right to have Stephens & Steely answer the simple question he had to them propounded, and if their answer raised an issue, then Barnett as trustee had the right to try out that issue without having it complicated and confused by the injection of an issue between Stephens & Steely on one hand and the parties they sought to bring in by their cross-petition on the other.

### Demurrer to Paragraph 2.

Paragraph 2 of this answer is long and complicated, but the substance is an allegation that by recommending

that this partition be allowed to stand Barnett as trustee is now estopped to claim this mortgage is preferential. We cannot agree with them. The only estoppel, if any, that would result from this recommendation would be an estoppel to open this partition or attack it in any way, but that is a very different thing from an estoppel to attack this mortgage as preferential. The court erred in overruling plaintiff's general demurrer to paragraph 2 of this answer.

### Demurrer to Paragraph 4.

The trustee in his petition had alleged:

"The plaintiff says that at the time of the making and execution and attempted acknowledgments of said mortgage, and at the time when it was attempted to lodge same for record and have same recorded, the said L. E. Bryant was absolutely insolvent and entirely unable to pay his debts in full, and the said mortgage was executed for the sole purpose of securing to the mortgagees therein the payment of said mortgage debts set up and shown therein, all and every part of which debts were old antecedent debts of said bankrupt and which had existed for many months prior to the execution of said mortgage."

In response to this, the defendants in this paragraph 4 say this:

"Defendants deny that at the time of the making or execution or attempted acknowledgment of said mortgage, or at the time it was lodged for record, or recorded, the said L. E. Bryant was absolutely insolvent or entirely unable to pay his debts in full, or that said mortgage was executed for the sole purpose of securing the mortgagees therein; the payment of said mortgage debts set up and shown therein."

This answer admits taking the mortgage from the bankrupt to secure pre-existing debts. It attempts to deny that the bankrupt was then insolvent, but this denial was not sufficient. The simple question was this: Was the bankrupt then insolvent?" The plaintiff had declared him to be absolutely and utterly insolvent. The use of the words "absolutely and utterly" was surplusage. However, the petition carried the charge that the bankrupt was insolvent even to the point of being ab-

solutely and utterly so, whereas the answer does not assert the bankrupt was not insolvent, it simply asserts he was not absolutely insolvent or utterly unable to pay his debts in full. It may be true he was not what defendants regard as absolutely insolvent or utterly insolvent, and yet be in fact insolvent.

"Where a fact is alleged with qualifying or modifying language, and the words of the allegation as so qualified or modified are literally denied, it is held that the qualifying circumstances alone are denied while the fact itself is admitted." 49 C. J. 271, sec. 336.

If the defendants had used the words, "or at all," "or to any extent," "in any degree," or some similar expression before the word insolvent, the denial would have been good, but without them it is not. Johnson v. Taylor, 247 Ky. 472, 57 S. W. (2d) 540; White v. City of Williamsburg, 213 Ky. 90, 280 S. W. 486; Gahren et al. v. Farmers' Bank of Estill County, 156 Ky. 717, 161 S. W. 1127; Hendrick v. Robert Mitchell Furniture Co., 29 S. W. 750, 16 Ky. Law Rep. 769; Vinegar v. Jackson, 8 Ky. Op. 304.

Two of the attorneys on this appeal were the attorneys in the case of White v. City of Williamsburg, and they won that case on the insufficiency of the denial in the answer, and that pleading is an exact counterpart of this one, and for the same reason that the denial there was held insufficient this one must be held so, the demurrer to it should have been sustained, and the court should have held this mortgage to be an assignment by L. E. Bryant of all his property and effects for the benefit of his creditors. We are told in brief that the liabilities of L. E. Bryant exceed $200,000 and his assets are less than $40,000, but no proof to that effect was introduced, and if the denial of L. E. Bryant's insolvency had been sufficient, it would be necessary to affirm this judgment.

## Was This Mortgage Attacked in Time?

By section 1911, Ky. Stats. it is provided that an attack upon a preferential mortgage must be made within six months after it is legally lodged for record. This mortgage could not be legally lodged for record until it was acknowledged. See sections 501 and 502, Ky. Stats.

On July 23, 1932, L. E. Bryant then at his home in Scott county, Tenn., called by telephone Mary Thomp-

son, a notary public, who was then in Williamsburg, Ky., and she took his acknowledgment over the telephone, certified it as of that date, and the mortgage was on that date recorded in Whitley County and on July 26th in Laurel County and on July 30th in McCreary County. Later the mortgagees became uneasy about this acknowledgment and Mr. L. E. Bryant came to Williamsburg and acknowledged it before the same notary on September 17, 1932, and it was again recorded in Whitley county on October 3, 1932.

Plaintiff has attacked the first acknowledgment because taken over the telephone, and the second one because the notary was not when she signed it Mary Thompson, but had by marriage become Mary Kessinger, and hence so he claims had no right to subscribe herself Mary Thompson. For the benefit of the profession, we will call attention to these cases and to authorities cited in them upon the first point: Hutchinson v. Stone, 79 Fla. 157, 84 So. 151; Myers v. Eby, 33 Idaho, 266, 193 P. 77, 12 A. L. R. 535; Roach v. Francisco, 138 Tenn. 357, 197 S. W. 1099, 1 A. L. R. 1074; Wester v. Hurt, 123 Tenn. 508, 130 S. W. 842, 30 L. R. A. (N. S.) 358, Ann. Cas. 1912C, 329; Kissel-Skiles Co. v. Neff, 232 Ky. 825, 24 S. W. (2d) 588.

We have found no authority upon the second point and have not tried to do so, nor have we worried about the interstate feature of the first acknowledgment, for it is not important. If the first acknowledgment is good, then this mortgage must be attacked within six months from July 23, 1932.

If it is not good and the second one is, then the attack must be begun within six months from October 3, 1932. If neither be good, then the attack can be begun at any time. The date of the filing of the bank's petition was October 5, 1932. Barnett, as trustee, filed his petition on January 18, 1933, so both were within six months even of the first filing of this mortgage for record. Thus, both suits were filed in time.

On October 19, 1935, the trustee's petition was dismissed by the court.

### Reawakening in the Bank Case.

After the decision and final dismissal by the court of the case of Barnett trustee, the Bank of Stearns in April, 1936, gave notice and moved for judgment in the

case begun by it. In came Dudley E. Bryant, et al., and filed five pages of pleading styled, "Response to motion." Barnett as trustee, etc., filed a five-page verified petition to be made a party. Stephens & Steely filed a six-page answer. The Bank filed a six-page reply and every one filed one or two demurrers, and the court dismissed the action.

### Was this Error?

We shall not go into the issues raised by these pleadings. The adjudication that L. E. Bryant was bankrupt had (four years before) dealt a death blow to the bank's case and all it had done therein, for it had all been done within four months of that adjudication.

The Bankruptcy Act (section 67f, 11 U. S. C. A. sec. 107(f) provides:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

Remington on Bankruptcy, vol. 9, p. 850, sec. 67f.

The State Bank of Stearns cites the case of Connell et al. v. Walker, 291 U. S. 1, 54 S. Ct. 257, 78 L. Ed. 613, and upon the basis thereof it insists it is entitled to have its attachment sustained and preserved, and that it was not voided by the adjudication that L. E. Bryant was a bankrupt.

To enable us to understand what the Supreme Court said in that case we must look at the facts, which we learn from the case of Walker v. Connell et al., 63 N. D. 622, 249 N. W. 726, 729. On November 1, 1930, Eva S. Walker loaned to Mrs. Connell $3,500 to enable her to

discharge mortgages upon 520 acres of land in Ramsey county, N. D. On June 12, 1931, Mrs. Connell conveyed this land to her son Merle C. Adams and his wife, Mary Adams, for a stated consideration of $10. On December 1, 1931, Eva S. Walker sued Mrs. Connell upon her $3,500 note, joined her son and his wife as defendants, and procured attachments that were levied on the land. On December 28, 1931, the defendants filed a joint answer verified by Mrs. Connell, admitting all the allegations of the complaint except that the transfer was made to cheat, defraud, hinder, or delay any creditor of Mrs. Connell. February 24, 1932, Mrs. Connell was adjudicated bankrupt in Los Angeles, Cal. On February 29, 1932, she and her son and his wife filed another joint answer setting up Mrs. Connell's bankruptcy adjudication and asking that the complaint be dismissed or the proceedings be stayed pending the bankruptcy. No trustee in bankruptcy was a party, nor was it made to appear there was such. It was stipulated the land was worth $5,000. Remember the parties seeking relief were Mrs. Connell, her son, and his wife.

In its opinion denying the relief sought, the Supreme Court of North Dakota said:

"While there is a division of authority on the question, it seems to us that the more just rule to apply in such case is that the provisions of section 67f of the Bankruptcy Act [11 U. S. C. A. sec. 107(f)] with respect to liens obtained prior to an adjudication through legal proceedings on nonexempt property can be invoked only by the trustee of the bankrupt or those claiming under him.

"And the logic of the following cases is to this effect: See Neugent Garment Company v. U. S. Fidelity & Guaranty Co., 202 Wis. 93, 230 N. W. 69, 231 N. W. 600; Martin v. Green Lake State Bank et al., 166 Minn. 405, 208 N. W. 21; Swaney v. Hasara, 164 Minn. 416, 205 N. W. 274; Miller v. Barto, 247 Ill. 104, 93 N. E. 140; Rochester Lumber Co. v. Locke, 72 N. H. 22, 54 A. 705. See, also, 7 C. J. 197 and cases cited."

The case reached the United States Supreme Court, and in affirming that judgment it said:

"We may assume, for present purposes, that

the trustee in bankruptcy, if there is one, could have taken and may still take appropriate proceedings to set aside the attachment as invalid under section 67f, 11 U. S. C. A. sec. 107 [f], either by intervention in the action in the state court, as authorized by section 11b, 11 U. S. C. A. sec. 29 [b]; see Lehman, Stern & Co. v. S. Gumbel & Co., 236 U. S. 448, 35 S. Ct. 307, 59 L. Ed. 666; Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, or by procuring an order of the bankruptcy court staying any further proceedings by the state court to secure the benefit of the attachment, Clarke v. Larremore, 188 U. S. 486, 23 S. Ct. 363, 47 L. Ed. 555; see Globe Bank v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583; compare Metcalf Bros. & Co. v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060, or that he might have avoided the attachment by the assertion of dominion over the property inconsistent with the continued existence of the lien, Chicago, B. & Q. R. Co. v. Hall, 229 U. S. 511, 33 S. Ct. 885, 57 L. Ed. 1306. * * * A judgment of dismissal, as prayed by the petitioners, would have dissolved the attachment and thus would have enabled the bankrupt to cut off the privilege reserved to the trustee to preserve it. * * * The bankrupt alone cannot invoke a judgment which would preclude the exercise of the privilege reserved to the trustee to assert rights under the lien.

"Bankruptcy proceedings do not, merely by virtue of their maintenance, terminate an action already pending in a nonbankruptcy court, to which the bankrupt is a party. Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; Jones v. Springer, 226 U. S. 148, 33 S. Ct. 64, 57 L. Ed. 161; Straton v. New, supra [283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060]. This is obviously the case where the suit like the present one is brought by a creditor to set aside a fraudulent conveyance of the bankrupt, made more than four months before the petition in bankruptcy. The right asserted is one given the creditor by state law which the Bankruptcy Act withdraws from him only upon the election of the trustee to assert the rights of the creditor as he is privileged to do by section 70e, 11 U. S. C. A. sec. 110 [e], an election, which, in this case, does not

appear to have been made. * * * It does not appear that there is any creditor other than respondent, or that the trustee had not been advised of the suit, or that the bankrupt could not, by giving notice to the trustee, have afforded the trustee ample opportunity to assert his rights if there were other creditors to protect."

See Connell v. Walker, 291 U. S. 1, 54 S. Ct. 257, 78 L. Ed. 613. Whether trustee intervened or not, we do not know, but Mrs. Walker got the land. See Holden v. Walker (N. D.) 265 N. W. 602.

It is a far cry from that case to this one. The Bank of Stearns obtained its attachment within four months of the bankruptcy. The adjudication of bankruptcy destroyed it. The trustee, Barnett, upon his qualification, succeeded not only to all the rights the bankrupt had, but also succeeded to the rights and remedies of the Bank of Stearns to have this mortgage adjudged to be preferential, under section 1910, Ky. Stats., and that it operated as an assignment and transfer of all the property and effects of L. E. Bryant and inured to the benefit of all his creditors as provided in section 1910. See sections 1512 and 1610 Remington on Bankruptcy, Third Ed.; Grandison v. Nat. Bank of Rochester (C. C. A.) 231 F. 800; Morgan v. First Nat. Bank (C. C. A.) 145 F. 466; In re Jones (D. C.) 118 F. 673; Woods v. Metropolitan Nat. Bank, 126 Wash. 346, 218 P. 266; Rivers-Yager Co.'s Trustee v. Lincoln Bank & Trust Co., 231 Ky. 767, 22 S. W. (2d) 256.

The petition of the Bank of Stearns was properly dismissed because the trustee has succeeded to its right to attack as preferential this mortgage to Stephens & Steely and he is actively doing so, and there is no need for further action by it.

There is much use of the word "fraud" in this record, and before closing this opinion we will say there is no evidence of any fraud. This transaction was not fraudulently or corruptly done. There was nothing morally wrong in the giving of this mortgage by L. E. Bryant to Stephens & Steely. Bryant's debt to them is an honest debt, and it was a commendable act on his part to endeavor to secure them and a prudent act on their part to try to make it collectible, but Mr. Bryant was insolvent, and when this case is considered in the light

of the opinion in Union Trust & Savings Co. v. Taylor, 142 Ky. 183, 134 S. W. 196, and McKinney Deposit Bank v. Cyrus W. Scott Mfg. Co., 207 Ky. 340, 269 S. W. 343; and Nock's Ex'r v. Goodloe, 5 Ky. Law Rep. 247, 12 Ky. Op. 278, we are compelled to hold it was preferential and inured to the benefit of all his creditors.

The effect of those decisions is to make the question, not whether a preference was intended by the debtor, but whether a preference was effected by what the debtor did. By the amendment of section 60b of the Bankruptcy Law in 1910 (11 U. S. C. A. sec. 96 [b]), it is expressly provided that it is the effect of what was done that governs and not the intent the parties may have had. The law stops looking when it discovers a preference has been effected; it is interested solely in the result, and not in the purpose of the parties. The question is simply: Was a preference given to a pre-existing debt by what was done, did the debtor then have reasonable cause to believe he was insolvent, in fact was so, and was the attack made within time?

### The Cross-Appeal.

On their cross-petition Stephens & Steely were adjudged to have a lien for $2,500 upon that portion of the premises that was conveyed to D. E. Bryant. No lien or recovery was given to or against Barnett, trustee, he had sought no relief against D. E. Bryant, and D. E. Bryant had sought none against him. On March 24, 1936, D. E. Bryant's motion for a cross-appeal against Barnett, trustee, and Stephens & Steely was inadvertently sustained. That order, being now reconsidered, is now set aside, and the motion for cross-appeal is overruled and cross-appeal is dismissed. As between Barnett, trustee, and D. E. Bryant, there is no issue, no relief was sought or obtained by either against the other, and D. E. Bryant cannot obtain a cross-appeal against the appellees Stephens & Steely. A cross-appeal cannot be granted against an appellee. See notes under section 755, Civil Code of Practice, 3 C. J. p. 353, sec. 106, note 48. If D. E. Bryant hopes to obtain relief from their $2,500 judgment, he must prosecute an original appeal therefrom against Stephens & Steely. City of Henderson v. Redman, 214 S. W. 809, 185 Ky. 146, 7 A. L. R. 346.

D. E. Bryant's cross-appeal is dismissed.

Judgment in appeal by Barnett, trustee, is reversed for judgment as indicated.

Judgment in appeal by State Bank of Stearns, Ky., is affirmed.